1  KRISTIN A. HENRY (Cal. Bar No. 220908)
   Sierra Club
2  85 Second Street, 2nd Floor
   San Francisco, CA 94105
3  Telephone: (415) 977-5716
   Facsimile:  (415) 977-5793
4  Kristin.Henry@sierraclub.org

5  Counsel for Plaintiffs Sierra Club and WildEarth Guardians

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB and WILDEARTH GUARDIANS, | Case No. |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |
| GINA MCCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency, | |
| Defendant. | |

**INTRODUCTION**

1. Plaintiffs Sierra Club and WildEarth Guardians bring this Clean Air Act citizen suit to compel the United States Environmental Protection Agency ("EPA") to undertake overdue mandatory duties. Specifically, Plaintiffs challenge the failure of Defendant, Gina McCarthy, in her official capacity as Administrator of the EPA, to perform certain mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q. These duties are the failure to make findings of failure to submit under 42 U.S.C. § 7410(k)(1)(B) for Good Neighbor provisions of State Implementation Plan ("SIP"), 42 U.S.C. § 7410(a)(2)(D)(i)(I), to redress interstate transport of ozone pollution for the 2008 ozone National Ambient Air Quality Standard. The states which have failed to submit their 2008 ozone NAAQS Good Neighbor provisions are: Arkansas, California, Connecticut, Georgia, Iowa, Illinois, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, New Hampshire, New Mexico, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Virginia, Washington, and West Virginia (collectively "States").

**JURISDICTION**

2. This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

**NOTICE**

3. Plaintiffs Sierra Club and WildEarth Guardians mailed via certified mail, return receipt requested, to Defendant Gina McCarthy a letter stating that they intend to sue Defendant for the violations alleged in this Complaint. This letter was mailed no later than August 28, 2014.

Defendant received the notice of intent to sue letter no later than September 10, 2014. More than sixty days have passed since Plaintiffs' mailed their notice of intent to sue letter and since Defendant received the letter. To date, Defendant has not remedied the violations alleged in this Complaint. Therefore, an actual controversy exists.

**VENUE**

4.      Defendant EPA resides in this judicial district. This civil action is brought against an officer of the United States acting in her official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. One of the claims in this Complaint concerns EPA's failure to perform mandatory duties with regard to California. EPA Region 9, whose jurisdiction includes California, is headquartered in San Francisco. Thus several of the events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco. In addition, Plaintiff Sierra Club is headquartered in San Francisco and one of Sierra Club's counsel is located in San Francisco. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

**INTRADISTRICT ASSIGNMENT**

5.      A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco. Accordingly, assignment to the San Francisco Division or the Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d).

**PARTIES**

6. Plaintiff SIERRA CLUB is a national grassroots nonprofit conservation organization formed in 1892. Sierra Club's purpose includes practicing and promoting the responsible use of Earth's ecosystems and resources, and protecting and restoring the quality of the natural and human environment. Sierra Club has over 600,000 members nationally.

7. Plaintiff, WILDEARTH GUARDIANS ("Guardians") is a conservation and environmental protection organization with approximately 5,000 members. It is organized as a non-profit corporation. Guardians and its members are dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding the Earth's climate and air quality. Guardians and its members work to reduce harmful air pollution in order to safeguard public health and welfare, and the environment.

8. Members and staffs of Sierra Club and Guardians live, work, recreate, and travel throughout the States and will continue to do so on a regular basis. Ozone in the affected States, including downwind states, threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' staffs and members. Ozone diminishes Guardians' and Sierra Club's staffs' and members' ability to enjoy the aesthetic qualities and recreational opportunities of the respective areas.

9. EPA's failure to timely perform the mandatory duties described herein also adversely affect Plaintiffs, as well as their staffs and members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act. The failure of EPA to perform the mandatory duties also creates uncertainty for Plaintiffs' staffs and members as to whether they are exposed to excess air pollution.

10. The above injuries will continue until the Court grants the relief requested herein.

3
COMPLAINT

1  11.     Defendant GINA MCCARTHY is the Administrator of the United States Environmental

2  Protection Agency.  In that role Administrator McCarthy has been charged by Congress with the

3  duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

4

5  **LEGAL BACKGROUND**

6  12.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against

7  air pollution in the United States with a view to assuring that the air we breathe throughout the

8  Nation is wholesome once again."  H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S.Code

9  Cong. & Admin. News 5356, 5356.  To promote this, the Clean Air Act requires EPA to set

10 National Ambient Air Quality Standards establishing maximum allowable concentrations for

11 certain pollutants, including ozone.

12 13.     Adverse impacts arise from ground-level ozone ("ozone") pollution, commonly referred

13 to as smog.  Ozone represents a serious air quality issue in many parts of the United States.

14 Exposure to ozone pollution causes numerous impacts to a person's respiratory system,

15 including asthma, pneumonia, and bronchitis, can result in the permanent scarring of lung tissue

16 and even death.  Moreover, the detrimental effects extend beyond public health.  Ozone pollution

17 also interferes with vegetation's ability to function properly.  This interference results in injuries

18 such as decreased crop yields and damage to native ecosystems.

19 14.     The Clean Air Act requires each state to submit a state implementation plan for every

20 promulgation or revision of a National Ambient Air Quality Standard, within three years of that

21 standard's promulgation or revision, that provides for the "implementation, maintenance, and

22 enforcement" of the standard.  42 U.S.C. § 7410(a)(1).  These are often referred to as

23 "Infrastructure" state implementation plans.  An Infrastructure state implementation plan

1  submittal must meet the requirements listed under 42 U.S.C. § 7410(a)(2). *See* 42 U.S.C. §§

2  7410(a)(2)(A)-(M).

3  15.   The Clean Air Act requires EPA to determine whether any state implementation plan

4  submittal is administratively complete. 42 U.S.C. 7410(k)(1)(B). EPA must make this

5  determination by "no later than 6 months after the date, if any, by which a State is required to

6  submit the plan or revision." Id.

7  16.   If a state fails to submit any required state implementation plan, there is no submittal that

8  may be deemed administratively complete, and EPA must make a determination stating that the

9  state failed to submit the required state implementation plan. 42 U.S.C. § 7410(k)(1)(B). This is

10  referred to as a "finding of failure to submit."

11  17.   A finding of failure to submit commences a 24 month "clock" during which EPA must

12  promulgate a federal implementation plan to address the missing state implementation plan

13  submittal. 42 U.S.C. § 7410(c)(1).

14

15  **STATEMENT OF THE CASE**

16  18.   This case involves the 2008 ozone NAAQS. EPA promulgated the 2008 ozone NAAQS

17  on March 12, 2008. *See* 73 Fed. Reg. 16,436-16,514 (March 27, 2008). The Clean Air Act

18  requires that states submit "Infrastructure" state implementation plans (SIP) to the EPA within

19  three years of EPA's promulgation of a NAAQS. 42 U.S.C. § 7410(a)(1). So for the 2008 ozone

20  NAAQS, Infrastructure SIPs were due by March 12, 2011. *See WildEarth Guardians v.*

21  *McCarthy,* 4:11-cv-5651-YGR *consolidated with 4:11-cv-5694-*YGR*,* Order Granting In Part

22  Plaintiffs' Motion for Summary Judgment; Granting Defendant's Cross-Motion for Summary

23  Judgment; Vacating Case Management and Other Hearing Dates [Dk.#64] (MSJ Order) at ¶2.

19. One of the elements of an Infrastructure SIP is referred to as the Good Neighbor provision. It is found in 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Good Neighbor provision requires that SIPs contain adequate provisions to ensure that pollution from an "upwind" state will not significantly contribute to nonattainment in, or interference with maintenance of a NAAQS in any "downwind" state. *Id.*

20. The Good Neighbor provision is one of the most important provisions of the Clean Air Act. It is the legal authority for several of the EPA's most significant emission reductions programs such as the "NOx SIP Call," the Clean Air Interstate Rule (CAIR), and most recently the "Transport Rule." *See, e.g., EPA v. EME Homer City Generation, L.P.,* 574 U.S. ___, 134 S. Ct. 1584, 1593 (2014) ("*Homer City*").

21. However, EPA only designed the Transport Rule to address the 1997 ozone NAAQS. EPA has yet to create, or even propose, a rule to deal with interstate transport of ozone in the context of the 2008 ozone NAAQS.

22. Thus, EPA had a mandatory duty to make a finding of failure to submit by September 12, 2011 for any state that has failed to submit its Good Neighbor provision for the 2008 ozone NAAQS. *Id.*

23. As of today, the following states have failed to submit Good Neighbor provisions for the 2008 ozone NAAQS:

> Arkansas, California, Connecticut, Georgia, Iowa, Illinois, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, New Hampshire, New Mexico, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Virginia, Washington, and West Virginia

24. EPA's refusal to take a relatively simple step mandated by Congress, referred to as a finding of failure to submit, that is critical to protecting the public health and welfare of millions

6
COMPLAINT

1    of people against ozone pollution, commonly referred to as smog.  EPA's refusal to make these
2    findings of failure to submit not only endangers people's health and very lives, damages native
3    ecosystems, exacerbates climate change and decreases crop yields, but it also disadvantages
4    certain states which have undertaken significant efforts to reduce their intrastate ozone precursor
5    emissions yet still have high levels of ozone pollution because of emissions from upwind states
6    which are transported into the downwind states. *See, e.g., EPA v. EME Homer City Generation,*
7    *L.P.*, 574 U.S. ___, 134 S. Ct. 1584, 1593 (2014) ("Left unregulated, the emitting or upwind
8    State reaps the benefits of the economic activity causing the pollution without bearing all the
9    costs. . . . Conversely, downwind States to which the pollution travels are unable to achieve
10   clean air because of the influx of out-of-state pollution they lack authority to control.").
11   25.     For example, George Aburn is the Director of the Air and Radiation Management
12   Administration within the Maryland Depart of the Environment ("MDE"). *See* Declaration of
13   George S. Aburn in Opposition to EPA's Motion to Extend ("Aburn Dec.") in *Maryland v. EPA*,
14   13-1070 (D.C. Cir. 5/30/13).  Mr. Aburn has plainly stated that "unless ozone [interstate]
15   transport is effectively reduced, Maryland cannot, by itself, comply with the Clean Air Act.
16   More importantly, over 4 million Marylanders continue to breather unhealthy air. Without an
17   effective solution to the ozone transport issue, public health in Maryland remains at risk." Aburn
18   Dec. at ¶3.
19   26.     MDE's research establishes that the influx of ozone transported from upwind states into
20   Maryland can be higher than 80 ppb at times. *Id.* at ¶7.  Recall that the 2008 ozone NAAQS is 75
21   ppb.  Thus, at certain times, even if Maryland's instate emissions contribution to its ozone
22   pollution was zero, Maryland would still be violating the 2008 ozone NAAQS because of ozone
23   transported from other states.  In order to attain the 75 ppb 2008 ozone NAAQS by the

| | |
|---|---|
| 1 | December 31, 2015 due date for the parts of Maryland that are in the Metro-D.C. and Metro- |
| 2 | Philadelphia nonattainment areas, "Maryland must have upwind reductions of [ozone precursors] |
| 3 | emissions as soon as possible." *Id.* at ¶10. This is because attainment by the December 31, 2015 |
| 4 | is based on a three year average of data from 2013, 2014 and 2015. In other words, states like |
| 5 | Maryland need upwind reductions which EPA is required to provide if upwind states fail to do so |
| 6 | and the clock is already running for these reductions. |
| 7 | 27. The scale of the problem is significant. For example, there are over 1 million people |
| 8 | living in the Baltimore ozone nonattainment area who are particularly at risk from exposure to |
| 9 | ozone because they have asthma, COPD, or cardiovascular disease. |
| 10 | |
| 11 | **PROCEDURAL HISTORY** |
| 12 | 28. This is not the first time this matter is before this Court. On November 22, 2011, |
| 13 | WildEarth Guardians filed a complaint alleging, among other claims, EPA had failed to make a |
| 14 | finding of failure to submit for 48 states for the 2008 ozone Infrastructure SIPs. *See* Case 4:11- |
| 15 | cv-5651-YGR, Dk.#1. On November 28, 2011, Midwest Environmental Defense Center filed a |
| 16 | complaint alleging EPA had failed to make a finding of failure to submit for numerous states for |
| 17 | the 2008 ozone NAAQS Infrastructure SIPs. *See* Case 3:11-cv-5694, Dk.#1. On December 13, |
| 18 | 2011, Midwest Environmental Defense Center filed an amended complaint which added Sierra |
| 19 | Club as a plaintiff as well as additional claims not relevant to the current case. *See* Case 3:11- |
| 20 | cv-5694-JSC, Dk.#6. On March 16, 2012, the Court consolidated these two cases. *See* Case |
| 21 | 4:11-cv-5651-YGR, Dk.#28. |
| 22 | 29. On April 13, 2012, Plaintiffs filed a motion for summary judgment on all of their then |
| 23 | pending claims, including the claim that EPA had failed to make findings of failure to submit for |

2008 ozone NAAQS Infrastructure SIPs. *See* Case 4:11-cv-5651-YGR, Dk.#36. Plaintiffs supported their motion for summary judgment with extensive affidavits, including the affidavit of David Howekamp, who had for 18 years been in charge of EPA's Air Division in EPA's Region 9. *See* Case 4:11-cv-5651-YGR,Dk.#37-4 at ¶2. Mr. Howekamp explained that in his opinion, EPA could make a finding of failure to submit within 30 days of a court order because it is not a highly technical or complicated regulatory action. *Id.* at ¶¶5-6.

30. EPA filed its "opposition" on May 29, 2012, essentially admitting liability except as to states that had recently submitted SIPs and asking for a due date of January 4, 2013. *See* Case 4:11-cv-5651-YGR, Dk.#44. On October 8, 2012, Plaintiffs filed a reply agreeing to the January 4, 2013 due date in the interest of compromise but also asking that EPA be required to forward the signed rule to the Office of Federal Register within three days of signature. *See* Case 4:11-cv-5651-YGR, Dk.#63. The delay in Plaintiffs filing their reply was due to long settlement negotiations which never actually came to fruition.

31. On October 17, 2012, the Court granted Plaintiffs' summary judgment requiring EPA to make a finding of failure to submit for all states which had not yet at that point submitted their 2008 ozone NAAQS Good Neighbor provisions by January 4, 2013 and requiring EPA to forward the rule to the Office of Federal Register within 3 days of signature. *See* Case 4:11-cv-5651-YGR, Dk.#64.

32. On January 4, 2013, pursuant to the Court's order, EPA issued a finding that numerous states had failed to submit 2008 ozone Infrastructure SIPs except as to the Good Neighbor provisions. 78 Fed. Reg. 2,882 (Jan. 15, 2013). As to the Good Neighbor provisions, despite the Court's order and the fact that numerous states had actually failed to submit, EPA refused to make a finding of failure to submit. 78 Fed. Reg. at 2,884. EPA chose to interpret the D.C.

9
COMPLAINT

1 Circuit's decision in *EME Homer City Generation v. EPA*, 696 F.3d 7, 31 (D.C. Cir. 2012) as concluding that "a SIP cannot be deemed to lack a required submission or deemed deficient for failure to meet the 110(a)(2)(D)(i)(I) obligation until after the EPA quantifies that obligation." 78 Fed. Reg. at 2,884. Rather than quantifying states' obligations under the Good Neighbor provisions, EPA simply said because it failed to make this quantification, it could not make findings of failure to submit pursuant to the D.C. Circuit's *Homer City* decision. Ignoring the plain language of the Clean Air Act, EPA found that states did not have an obligation to submit Good Neighbor provisions and therefore EPA did not have an obligation to make findings of failure to submit. Plaintiffs refer to the January 4, 2013 notice as EPA's "non-finding."

33. Sierra Club, Environmental Defense Fund, along with the states of Maryland, Connecticut, Delaware and the District of Columbia appealed EPA's January 4, 2013 "non-finding" to the D.C. Circuit. *See Maryland v. EPA*, 13-1070 (consolidated with No. 13-1072).

34. While that appeal was pending, the Supreme Court reversed the D.C. Circuit's *Homer City* decision. *See EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584 (2014). The Supreme Court held the plain language of the Clean Air Act mandated that states submit Good Neighbor provisions within three years of EPA promulgating a NAAQS, and that EPA need not undertake any action to trigger this obligation. *Homer City*, 134 S.Ct. at 1600.

35. In light of the Supreme Court's decision, EPA agreed to Sierra Club, EDF, Maryland, Connecticut, Delaware and the District of Columbia's request that EPA seek a voluntary vacatur and remand of EPA's January 4, 2013 non-finding. Thus, on August 1, 2014 the D.C. Circuit vacated and remanded EPA's January 4, 2013 non-finding. *See Maryland v. EPA*, 13-1070 (D.C. Cir. Aug 1, 2014) Order [Document#1505606] at 1.

36. As it is wont to do, subsequent to the D.C. Circuit's vacating the January 4, 2013 non-finding, EPA has done nothing despite repeated requests for prompt action by Sierra Club, EDF, Maryland, Connecticut, Delaware and the District of Columbia.

37. When EPA undertakes a mandatory duty under the Clean Air Act but that undertaking is later vacated by a court, EPA once again has a mandatory duty. For example, in *Environmental Defense v. Leavitt*, 329 F. Supp. 2nd 55 (D.D.C. 2004), EPA had promulgated a regulation implementing the Clean Air Act's Best Available Retrofit Technology (BART) standards. *Id.*, 329 F. Supp. 2nd at 60. The D.C. Circuit subsequently vacated and remanded EPA's BART rule. *Id.*, 329 F. Supp. 2nd at 61. Environmental Defense then sued EPA for violating its mandatory duty by failing to promulgate a BART rule. The D.C. District Court found that it had jurisdiction to enforce such a mandatory duty. The D.C. District Court explained:

> When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must "initiate another rulemaking proceeding if it would seek to confront the problem anew." *Indep. U.S. Tanker Owners Comm. v. Dole, 258 U.S. App. D.C. 6, 809 F.2d 847, 854 (D.C. Cir. 1987)*; *Sugar Cane Growers Co-op. of Florida v. Veneman, 351 U.S. App. D.C. 214, 289 F.3d 89, 97 (D.C. Cir. 2002)* (same).

*Id.*, 329 F. Supp. 2nd at 64.

38. Thus, on September 9, 2014, Sierra Club and WildEarth Guardians filed a Rule 60(b) Motion to Modify Judgment in Case 4:11-cv-5651-YGR requesting that the Court modify its previous summary judgment order to set a new date by which EPA must make findings of failure to submit 2008 ozone NAAQS Good Neighbor provisions for those states which had still failed to submit those provisions. *See* Case 4:11-cv-5651-YGR, Dk#90.

39. The Court denied Plaintiffs Rule 60(b) motion. *See* Case 4:11-cv-5651-YGR, Dk#95. However, in denying Plaintiffs Rule 60(b) motion, the Court stated: "It is clear enough that EPA

11
COMPLAINT

1   should now take action and make findings as to which states are not in compliance with the

2   Good Neighbor provisions." *Id.* at 4.

3   40.    The Court also stated: "As the parties acknowledge, plaintiffs can bring a new action to

4   enforce EPA's mandatory duty concerning the Good Neighbor provision relative to the 2008

5   ozone NAAQS[.]" *Id.* Thus, Plaintiffs are filing this current action.

## CLAIM FOR RELIEF

## CLAIM ONE

(EPA's Failure to find that States have not Submitted 2008 ozone National Ambient Air Quality Standard Good Neighbor Provisions)

41.    Plaintiffs incorporate by reference paragraphs 1 through 40.

42.    Pursuant to the Clean Air Act, each state must submit an "Infrastructure" state implementation plan that provides for the "implementation, maintenance, and enforcement" of a National Ambient Air Quality Standard, including the Good Neighbor provisions found in 42 U.S.C. § 7410(a)(2)(D)(i)(I), within three years of a standard's promulgation or revision. 42 U.S.C. § 7410(a)(1).

43.    The Clean Air Act requires EPA to determine whether a state implementation plan submittal is administratively complete. *See* 42 U.S.C. 7410(k)(1)(B).

44.    If a state fails to submit any required state implementation plan, there is no submittal that may be deemed administratively complete and EPA must make a determination stating that the state failed to submit the required state implementation plan. *See* 42 U.S.C. § 7410(k)(1)(B). This is referred to as a "finding of failure to submit."

45. Thus, if a state does not submit a state implementation plan, EPA must make a finding of failure to submit no later than six months after the date by which the state implementation plan submittal was due. *See* 42 U.S.C. § 7410(k)(1)(B).

46. On March 12, 2008, the EPA promulgated National Ambient Air Quality Standards for ozone. *See* 73 Fed. Reg. 16436-16514 (March 27, 2008). EPA set a standard of 0.075 parts per million. *See* 40 C.F.R. § 50.15.

47. In accordance with Section 110(a)(1) of the Clean Air Act, States are required to submit SIPs to attain and maintain the National Ambient Air Quality Standards within three years of the promulgation or revision of a National Ambient Air Quality Standard. *See* 42 U.S.C. § 7410(a)(1). In assuring that SIPs attain and maintain the National Ambient Air Quality Standards in accordance with Section 110(a)(1), States must ensure their SIPs include requirements set forth under Section 110(a)(2). *See* 74 U.S.C. § 7410(a)(2). These requirements include, but are not limited to:

- Limits on interstate transport (42 U.S.C. § 7410(a)(2)(D));

48. States must submit Infrastructure SIPs for the 2008 ozone National Ambient Air Quality Standards by no later than March 12, 2011. *See* 73 Fed. Reg. 16436, 16503 (March 27, 2008). *See also* http://www.epa.gov/air/urbanair/sipstatus/reports/al_infrabypoll.html#x110_a__2__ozone__2008_

49. As of today, the following states have failed to submit Good Neighbor provisions for the 2008 ozone NAAQS:

Arkansas, California, Connecticut, Georgia, Iowa, Illinois, Kansas, Massachusetts, Maine, Michigan, Minnesota, Missouri, New Hampshire, New Mexico, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Virginia, Washington, and West Virginia

50. The Administrator is required to make a finding as to whether a State has submitted the required SIP no later than six months after the date by which the State was required to submit such a SIP. *See* 42 U.S.C. § 7410(k)(1)(B). Thus, EPA must make findings of failure to submit SIPs for the 2008 ozone National Ambient Air Quality Standards by no later than September 12, 2011.

51. EPA has not made findings that any of the States listed in paragraph 49 have failed to submit Good Neighbor provisions for the 2008 ozone National Ambient Air Quality Standard.

52. Thus, EPA is in violation of its mandatory duty with regard to the States listed in paragraph 49.

## REQUEST FOR RELIEF

WHEREFORE, WildEarth Guardians and Sierra Club respectfully request that the Court:

A. Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B. Issue a mandatory injunction requiring the Administrator to perform her mandatory duties by certain dates;

C. Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

D. Grant WildEarth Guardians and Sierra Club their reasonable costs of litigation, including attorneys' and experts' fees; and

1  E. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

 /s/Kristin A. Henry

Kristin A. Henry (Cal. Bar No. 220908)
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Telephone: (415) 977-5716
Facsimile:  (415) 977-5793
Kristin.Henry@sierraclub.org

Counsel for Sierra Club and WildEarth Guardians

Dated: November 18, 2014