ROBERT UKEILEY (admitted *Pro Hac Vice*)
Law Office of Robert Ukeiley
255 Mountain Meadows Road
Boulder, CO 80302
Tel: (303) 442-4033
Email:  rukeiley@igc.org


 KRISTIN HENRY (Cal. Bar No. 220908)
Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105
Telephone: (415) 977-5716
Facsimile: (415) 977-5793
Kristin.Henry@sierraclub.org

Counsel for Plaintiffs WildEarth Guardians and Sierra Club

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SIERRA CLUB and WILDEARTH GUARDIANS | ) |
| | ) Case No. 4:14-cv-5091-YGR |
| | ) |
| Plaintiff, | ) PLAINTIFFS' MOTION |
| v. | ) FOR SUMMARY JUDGMENT |
| | ) |
| GINA McCARTHY, | ) |
| in her official capacity as Administrator of the | ) |
| United States Environmental Protection Agency, | )  NOTICED FOR HEARING |
| Defendant. | ) MARCH 10, 2015 AT 2 P.M. |

## **GLOSSARY**

| | |
|---|---|
| CSAPR: | Cross State Air Pollution Rule a/k/a Transport Rule |
| EPA: | Administrator of the United States Environmental Protection Agency |
| FIP: | Federal Implementation Plans |
| FIP Clock: | The 24 month period which starts with a finding of failure to submit and imposes a mandatory duty on EPA to promulgate a FIP. |
| Good Neighbor Provision: | Clean Air Act § 110(a)(2)(D)(i)(I), 42 U.S.C. § 7410(a)(2)(D)(i)(I) |
| MDE: | Maryland Department of the Environment |
| NAAQS: | National Ambient Air Quality Standard |
| PM: | Particulate Matter |
| PPB: | Parts per billion |
| SIP: | State Implementation Plans |

# TABLE OF CONTENTS

NOTICE OF MOTION ……………………………………………………………1

RELIEF REQUESTED……………………………………………………………..1

POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION ………………..2

I.      ISSUE TO BE DECIDED……………………………………………………..2

II.     SUMMARY OF ARGUMENT……………………………………………….2

III.    INTRODUCTION......................................................................................3

IV.     LEGAL BACKGROUND, PROCEDURAL HISTORY AND STANDARD OF
        REVIEW........................................................................................6

        A.      LEGAL BACKGROUND OF THE CLEAN AIR ACT:
                NATIONAL AMBIENT AIR QUALITY STANDARDS AND STATE
                IMPLEMENTATION PLAN SUBMITTALS…………..........................6

        B.      PROCEDURAL HISTORY OF THIS MATTER…………………………8

        C.      LEGAL STANDARD FOR SUMMARY JUDGMENT............................12

V.      FACTS………………………………………………………….......13

VI.     ARGUMENT…………………………………………………...14

        A.      EPA IS LIABLE FOR FAILURE TO PERFORM ITS MANDATORY
                DUTY TO MAKE A FINDING THAT 25 STATES FAILED TO SUBMIT
                GOOD NEIGHBOR PROVISION ……..…………………………………..15

        B.      THE COURT SHOULD REQUIRE EPA TO MAKE THE FINDINGS OF
                FAILURE TO SUBMIT WITHIN 30 DAYS OF ISSUANCE OF THE
                COURT'S ORDER..……………………………………………….……..17

                1.      EPA's delay in making the finding provides the 25 states with an
                        unfair advantage over other states which have complied with the
                        Good Neighbor requirement and/or receive the 25 states'pollution..18

                2.      There are serious public health and welfare impacts caused by
                        EPA's illegal delay in making findings of failure to submit..……......20

3.      Making the finding is a relatively simple task as demonstrated
        by Plaintiffs' expert and mock finding of failure to submit ...………...21

4.      EPA has been on notice it would have to make these findings since
        at 2011……………… ………………………..………………...22

5.      EPA's abysmal record of delay in implementing the Act makes any
        assertions by EPA about the appropriate timing of  the finding suspect.23

VII.    CONCLUSION……......................................................................................25

**TABLE OF AUTHORITIES**

**CASES**

*Alabama Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979)…………………………... 24

*American Lung Ass'n v. Browner*, 884 F.Supp. 345 (D.Ariz. 1994)…...……... ………....24

*Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)…………….….………..……13

*Brower v. Evans*, 257 F.3d 1058 (9th Cir. 2001)…………………………………….16

*Celotex Corporationv. Catrett*, 477 U.S. 317 (1986)………………………….….……..13

*Environmental Defense v. Leavitt*, 329 F. Supp. 2nd 55 (D.D.C. 2004)…………………..11,12

*EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584 (2014)…3,5,7,10,11,19,23

*FEC v. Akin*, 524 U.S. 11, 20-25 (1998)……………………………………………..15

*Maryland v. EPA*, 13-1070 (D.C. Cir. 5/30/13)…………………………………………11

*Natural Resources Defense Council, Inc. v. EPA*,
22 F.3d 1125 (D.C. Cir. 1994)…………………………………………….................16

*Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)…………………………..13

*Sierra Club v. Thomas,* 658 F. Supp. 165 (N.D.Cal. 1987)…………………………….24

*Summers v. A. Teichert & Son,Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997)…………..………12

**FEDERAL STATUTES**

42 U.S.C. § 7409(a)…………………………………………………………………….6

42 U.S.C. § 7409(d)(1)………………………………………………………………....6

42 U.S.C. § 7410(a)(1)……………………………………….…….……………6,9,13,17

42 U.S.C. § 7410(a)(2)………………………………………………………………….13

42 U.S.C. § 7410(a)(2)(A)……………………………………...……………………….7

42 U.S.C. § 7410(a)(2)(A)-(M)……………………………………...…... ………….....7

42 U.S.C. § 7410(a)(2)(B)&(F)…...…………………………………………...…7

42 U.S.C. § 7410(a)(2)(D)(i)…………………………………...…………………...7,20

42 U.S.C. § 7410(a)(2)(D)(i)(I)…...…………………..……………..…………2,4,7,9,10,13,14,15

42 U.S.C. § 7410(c)(1)(A)…………………………………………..…………......8

42 U.S.C. § 7410(k)(1)(B)………………………………………………………8,10-17,21

**CODE OF FEDERAL REGULATOINS**

40 C.F.R. § 50.15……………………………………………………………13

**FEDERAL REGISTER**

63 Fed. Reg. 57,356 (Oct. 27, 1998)………...……………………..………...……7

70 Fed. Reg. 21,147 (Apr. 25, 2005)…………………………………………17

70 Fed. Reg. 25,162 (May 12, 2005)…………………………………..……………7

73 Fed. Reg. 16,205 (Mar. 27, 2008)……………………………..……………17

73 Fed. Reg. 16,436 (Mar. 27, 2008).................................................................9,12,13,16

73 Fed. Reg. 62,902 (Oct. 22, 2008)……………………………………17

76 Fed. Reg. 48,208 (Aug. 8, 2011)……………………………………………...7

76 Fed. Reg. 80,760 (Dec. 27, 2011)…………………………………………20

76 Fed. Reg. 82,133 (Dec. 30, 2011)…………………………...…………………20

78 Fed. Reg. 2,882 (Jan. 15, 2013)…………………………………………...10

79 Fed. Reg. 75,234, 75,236 (Dec. 17, 2014)………………………………………4,5,16

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R. Civ. P. 56(c)………………………………………………...……………1

**LEGISLATIVE MATERIALS**

H.Rep.No. 91-1146, 91st Cong., 2d Sess. 1 (1970) U.S.Code
Cong. & Admin. News 5356 (1970)…………………………………............................6

1

**NOTICE OF MOTION**

2

Please take notice that on March 10, 2015 at 2:00 p.m. or as soon thereafter as counsel

3

can be heard, Plaintiffs Sierra Club and WildEarth Guardians [hereinafter collectively "Sierra

4

Club"] will move, pursuant to Fed. R. Civ. P. 56(c), this Court to grant summary judgment on

5

Claim One of the First Amended Complaint.

6

7

**RELIEF REQUESTED**

8

Sierra Club seeks an order: (1) requiring Defendant Gina McCarthy within 30 days of the

9

Court's order to make findings of failure to submit for the "Good Neighbor" provision of the

10

Infrastructure State Implementation Plan for the 2008 ozone National Ambient Air Quality

11

Standard for the states of Alabama, Arkansas, California, Connecticut, Florida, Georgia, Iowa,

12

Illinois, Kansas, Massachusetts, Maine, Michigan, Minnesota, Mississippi, Missouri, New

13

Hampshire, New Mexico, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South

14

Carolina, Virginia, Washington, and West Virginia, and; (2) declaring that Defendant has

15

violated her mandatory duty under the Clean Air Act by failing to make such findings.

16

17

18

19

20

21

22

23

28

1

**POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION**

2

**I.      ISSUE TO BE DECIDED**

3          The main issue in this case is the remedy; that is, the amount of time the Court should

4   grant EPA to comply with its mandatory duty, which EPA will likely admit it is currently

5   violating, to make findings that 25 states have failed to submit their "Good Neighbor" state

6   implementation plan provision for the 2008 ozone National Ambient Air Quality Standard.

7   Sierra Club requests that EPA be ordered to make this finding of failure to submit within 30 days

8   of the Court's order.  The Court should only grant a longer time period if it is not possible for

9   EPA to make the findings of failure to submit within this 30 day period.

10

11  **II.     SUMMARY OF ARGUMENT**

12         Defendant Gina McCarthy, in her official capacity as Administrator of the United States

13  Environmental Protection Agency [hereinafter "EPA"] has failed to make findings that 25 states

14  have failed to submit "Good Neighbor" state implementation plan (SIP) submittals, 42 U.S.C. §

15  7410(a)(2)(D)(i)(I), by the Congressionally mandated deadline.  The Good Neighbor SIP

16  submittal would ensure that the 25 states do not significantly contribute to violations of, or

17  interfere with maintenance of the 2008 ozone National Ambient Air Quality Standard in

18  "downwind" states.

19         EPA will likely concede liability.  EPA will likely admit that it has not made findings

20  that the 25 states failed to submit their 2008 ozone NAAQS Good Neighbor provision submittal

21  and thus, EPA is in violation of its mandatory duty to make such findings.

22         Thus, the issue before the Court is how long the Court should give EPA to make the

23  findings of failure to submit.  Sierra Club requests the Court order EPA to make the required

28

finding within 30 days of its order because: (1) EPA's delay in making the finding provides the 25 states with an unfair advantage over other states which have complied with the Good Neighbor requirement and/or receive the 25 states' pollution, *See, e.g., EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584, 1593 (2014); (2) EPA's delay endangers innocent people's lives, health and economic wellbeing; (3) making the finding of failure to submit is a simple "cut and paste" job which does not involve technical or policy judgments; and (4) EPA has been on notice it would have to make these findings for a long time.

### III.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c), Sierra Club moves for summary judgment on Claim One of the First Amended Complaint.  This is not the first time this issue has been before this Court.  Rather, it is the third time although this time the factual scope of the claim is narrower, that is there are less state implementation plan (SIP) submittals for which EPA has failed to make a finding of failure to submit.  The first time this issue was before the Court was when Sierra Club, WildEarth Guardians and another group filed a summary judgment motion in *WildEarth Guardians et al. v. McCarthy*, 11-cv-5651-YGR (and related action 11-cv-5694-YGR) [Dk. #36].  The second time was when these groups filed a Fed. R. Civ. P. 60(b) motion in the same case after EPA's refusal to make a finding of failure to submit for Good Neighbor provision submittals was vacated by the United States Court of Appeals for the District of Columbia Circuit.  *Id.* at Dk. #90.  Thus much of this brief recycles arguments previously presented to the Court.

As detailed below, Claim One is a "missed deadline" claim against a federal agency that has blatantly missed a statutory deadline designed to protect public health and welfare and

ensure a level "playing field" between the states.  Specifically, the Clean Air Act sets a mandatory deadline for EPA to issue a finding of failure to submit for each state that has not submitted any element of the required "Infrastructure" state implementation plan for the 2008 ozone National Ambient Air Quality Standard ("NAAQS").  EPA has missed its mandatory deadline to make findings that 25 states have failed to submit 2008 ozone NAAQS Infrastructure SIP Good Neighbor provisions found in 42 U.S.C. § 7410(a)(2)(D)(i)(I).

EPA's missed mandatory duty has serious consequences for the implementation of the 2008 ozone NAAQS, and thus for public health and welfare.  Adverse impacts arise from ozone pollution, commonly referred to as smog.  Ozone represents a serious air quality issue in many parts of the United States.  Exposure to ozone pollution exacerbates asthma, pneumonia, and bronchitis, and can result in the permanent scarring of lung tissue.  Fact 7.  Exhaustive scientific review by EPA has determined that ozone also causes emergency department visits, hospital admissions for respiratory causes, and even death.  Fact 8.  Those most at risk from ozone pollution are children; active people, *e.g.,* runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people.  Fact 9. Moreover, the detrimental effects extend beyond public health.  Ozone pollution also interferes with vegetation's ability to function properly.  This interference results in injuries such as decreased crop yields and damage to native ecosystems.  Fact 10.

In addition, EPA's illegal refusal to hold the 25 states accountable for failing to submit a Good Neighbor SIP provides the 25 states with an unfair advantage over other compliant states such as Maryland.  Pollution from several of the 25 states, such as Michigan, North Carolina and Virginia, significantly contributes to Maryland's ozone problem, according to EPA.  Fact 25.

1    *See* http://www.epa.gov/crossstaterule/whereyoulive.html (last visited 1/16/15).[1]  Furthermore,

2    Maryland has complied with its obligation to submit a Good Neighbor SIP submittal for the

3    2008 ozone NAAQS.  Fact 26.

4         Thus, because of EPA's illegal delay, Maryland suffers two problems.  As the Supreme

5    Court explained: "Left unregulated, the emitting or upwind State [*e.g.* the 25 states] reaps the

6    benefits of the economic activity causing the pollution without bearing all the costs. . . .

7    Conversely, downwind States [*e.g.* Maryland] to which the pollution travels are unable to

8    achieve clean air because of the influx of out-of-state pollution they lack authority to control.").

9    *EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584, 1593 (2014).

10        Despite these serious consequences – and Congressional mandates – EPA has failed to

11   issue findings of failure to submit for 25 states' Good Neighbor element of the Infrastructure SIP

12   for the 2008 ozone NAAQS.  In light of the grave nature of the injury from ozone pollution,

13   EPA's history of delay, and the limited scope of the work needed to be done for the findings of

14   failure to submit, Sierra Club requests that the Court not countenance any EPA request for

15   further delay and require EPA issue the findings within 30 days of the Court issuing an order

16   granting Sierra Club summary judgment.  Any claim by EPA that its "limited resources" prevent

17   it from complying with a Court order requiring compliance within 30 days should be disregarded

18   as disingenuous.  EPA has spent significantly more resources on trying to avoid making the

19   findings of failure to submit than would be necessary to actually make the findings of failure to

20   submit.  Thus, EPA must have some other motive for its illegal delay that endangers people's

21

22

23   _____

[1] If one moves their cursor over a particular state, the map will show the pollution linkage for
that particular state in this otherwise very busy map.

28

1  health and very lives and creates inequity between the states.  That unarticulated motive cannot

2  be the basis for giving EPA more time to complete its mandatory duty.

3

4  **IV.  LEGAL BACKGROUND, PROCEDURAL HISTORY AND STANDARD OF REVIEW**

5

6  **A.  Legal Background of the Clean Air Act: National Ambient Air Quality Standards and State Implementation Plan Submittals**

7  Congress enacted the Clean Air Act to "**speed up**, expand, and intensify the war against

8  air pollution in the United States with a view to assuring that the air we breathe throughout the

9  Nation is wholesome once again."  H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1, 1, 1970 U.S.

10  Code Cong. & Admin. News 5356, 5356 (emphasis added).  To promote this, the Act requires

11  EPA to set National Ambient Air Quality Standards (NAAQS) for certain pollutants, including

12  ozone.  42 U.S.C. § 7409(a).  The Act also requires EPA to review and revise, as appropriate, the

13  NAAQS every five years.  42 U.S.C. § 7409(d)(1).  Because EPA consistently misses

14  Congressionally mandated deadlines, including the deadline to review and revise the NAAQS

15  every five years, there is a 1997 ozone NAAQS and then the next ozone NAAQS is the 2008

16  ozone NAAQS, some 11 years, rather than five years, later.

17  Within three years of a National Ambient Air Quality Standard's promulgation or

18  revision, each state must submit a state implementation plan that provides for the

19  "implementation, maintenance, and enforcement" of the standard.  42 U.S.C. § 7410(a)(1).

20  These SIPs are known as "Infrastructure" SIPs because they establish the infrastructure of a

21  state's basic air pollution control program.  Other SIPs address other aspects of air pollution

22  control, such as SIPs to clean up the air in specific nonattainment areas, or regional haze SIPs to

23

28

get rid of haze in specific national parks.  These SIPs are known as Nonattainment area SIPs and Regional Haze SIPs, respectively.

The requirements for Infrastructure SIPs are set forth in 42 U.S.C. § 7410(a)(2)(A) – (M). These include, for example, enforceable emission limits for sources of pollution, 42 U.S.C. § 7410(a)(2)(A), and a network of ambient air pollution monitors and monitors of emissions from sources of pollution, 42 U.S.C. § 7410(a)(2)(B) & (F).

The Infrastructure SIP element at 42 U.S.C. § 7410(a)(2)(D)(i) is referred to as the Good Neighbor provision.  The 25 states' Good Neighbor provision for the 2008 ozone NAAQS, or lack thereof, is the basis for the dispute in this motion.  Good Neighbor provisions require each state to ensure that its pollution is not causing certain adverse impacts in downwind states such as contributing to nonattainment areas or interfering with maintenance of the NAAQS.  *Id.* at § 7410(a)(2)(D)(i)(I).  The Good Neighbor provisions of the Infrastructure SIP for the 1979 and 1997 ozone NAAQS and the 1997 PM2.5 NAAQS have been implemented through programs called the NOx SIP Call, the Clean Air Interstate Rule, and the Transport Rule, which is also known as the Cross State Air Pollution Rule (CSAPR).  *See* 63 Fed. Reg. 57,356 (Oct. 27, 1998); 70 Fed. Reg. 25,162 (May 12, 2005); 76 Fed. Reg. 48,208 (Aug. 8, 2011).  The NOx SIP Call and CAIR have resulted in reductions of hundreds of thousands of tons of air pollution which has lowered ambient pollution levels for millions of people.[2]  However, the NOx SIP Call, CAIR, and the Transport Rule were designed to comply with the 1979 and 1997 ozone NAAQS, not the more protective 75 parts per billion (ppb) 2008 ozone NAAQS.   The relief Plaintiffs seek in this

---

[2] The Transport Rule was affirmed by the Supreme Court in *EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584, 1593 (2014).  However, the Supreme Court remanded the case back to the D.C. Circuit, which is currently considering additional challenges to the Transport Rule.

1    case will be one of the first steps in moving EPA towards getting the emission reductions that

2    will reduce ozone pollution below the 75 ppb 2008 ozone NAAQS and ensuring that it stays

3    there.

4         The Clean Air Act requires EPA to determine whether there has been an administratively

5    complete state implementation plan submittal, including an Infrastructure SIP, "no later than 6

6    months after the date, if any, by which a State is required to submit the plan or revision." 42

7    U.S.C. § 7410(k)(1)(B).  If a state fails to submit any required SIP or SIP element, there is no

8    submittal that may be deemed administratively complete and EPA has a non-discretionary duty

9    to make a determination stating that the state failed to submit the required SIP.  42 U.S.C.

10   7410(k)(1)(B).  This is commonly referred to as a "finding of failure to submit."  This is the

11   mandatory duty at issue in claim one.

12        The finding of failure to submit is critical because it starts a two year "FIP Clock."  That

13   is, within two years of making a finding of failure to submit, EPA has a mandatory duty to

14   promulgate a Federal Implementation Plan (FIP) which accomplishes what the missing SIP was

15   supposed to accomplish.  42 U.S.C. § 7410(c)(1)(A).  But without the finding of failure to

16   submit, the FIP Clock is not started and Congress' carefully crafted system to speed up the war

17   on air pollution and ensure equality among the states grinds to a halt.

18       **B.      Procedural History of this Matter**

19        On November 22, 2011, WildEarth Guardians filed a complaint alleging, among other

20   claims, EPA had failed to make findings of failure to submit for 48 states for the 2008 ozone

21   Infrastructure SIPs. *See* Case 4:11-cv-5651-YGR, Dk.#1.  On November 28, 2011, Midwest

22   Environmental Defense Center filed a complaint alleging EPA had failed to make findings of

23   failure to submit for numerous states for the 2008 ozone NAAQS Infrastructure SIPs. *See* Case

28

3:11-cv-5694, Dk.#1.  On December 13, 2011, Midwest Environmental Defense Center filed an amended complaint which added Sierra Club as a plaintiff as well as additional claims not relevant to the current case.  *See* Case 3:11-cv-5694-JSC, Dk.#6.  On March 16, 2012, the Court consolidated these two cases.  *See* Case 4:11-cv-5651-YGR, Dk.#28.

On April 13, 2012, Plaintiffs in 11-cv-5651-YGR filed a motion for summary judgment on all of their then pending claims, including the claim that EPA had failed to make findings of failure to submit for 2008 ozone NAAQS Infrastructure SIPs.  *See* Case 4:11-cv-5651-YGR, Dk.#36.  Plaintiffs supported their motion for summary judgment with extensive affidavits, including the affidavit of David Howekamp, who had for 18 years been in charge of EPA's Air Division in EPA's Region 9.  *See* Case 4:11-cv-5651-YGR, Dk.#37-4 at ¶2.  Mr. Howekamp explained that in his opinion, EPA could make a finding of failure to submit within 30 days of a court order because it is not a highly technical or complicated regulatory action.  *Id.* at ¶¶5-6.

EPA filed its "opposition" on May 29, 2012, essentially admitting liability except as to states that had recently submitted SIPs and asking for a due date of January 4, 2013.  *See* Case 4:11-cv-5651-YGR, Dk.#44.  On October 8, 2012, Plaintiffs filed a reply agreeing to the January 4, 2013 due date in the interest of compromise but also asking that EPA be required to forward the signed rule to the Office of Federal Register within three days of signature. *See* Case 4:11-cv-5651-YGR, Dk.#63.  The delay in Plaintiffs filing their reply was due to long settlement negotiations which never came to fruition.

On October 17, 2012, this Court granted Plaintiffs in 11-cv-5651-YGR summary judgment requiring EPA to make findings of failure to submit for all states which had not yet at that point submitted their 2008 ozone NAAQS Good Neighbor provisions by January 4, 2013

1  and requiring EPA to forward the rule to the Office of Federal Register within 3 days of

2  signature. *See* Case 4:11-cv-5651-YGR, Dk.#64.

3      On January 4, 2013, pursuant to the Court's order, EPA issued a finding that numerous

4  states had failed to submit 2008 ozone Infrastructure SIPs except as to the Good Neighbor

5  provisions. 78 Fed. Reg. 2,882 (Jan. 15, 2013).  EPA's finding of failure to submit for the

6  elements other than Good Neighbor provisions for the 2008 ozone NAAQS have not been

7  disturbed in any way and remain in place today.  Predictably, however, the two year "FIP clock"

8  has run and yet EPA is in violation of its mandatory duty to promulgate FIPs for many of these

9  non-Good Neighbor elements.  However, those violations of EPA's mandatory duties are not at

10  issue in this case.

11      As to the Good Neighbor provisions, despite the Court's order and the fact that numerous

12  states had actually failed to submit, EPA refused to make a finding of failure to submit. 78 Fed.

13  Reg. at 2,884.  EPA chose to interpret the D.C. Circuit's majority opinion in *EME Homer City*

14  *Generation v. EPA*, 696 F.3d 7, 31 (D.C. Cir. 2012) *rev'd* 574 U.S. ___, 134 S. Ct. 1584 (2014)

15  as concluding that "a SIP cannot be deemed to lack a required submission or deemed deficient

16  for failure to meet the 110(a)(2)(D)(i)(I) obligation until after the EPA quantifies that

17  obligation." 78 Fed. Reg. at 2,884.  Rather than quantifying states obligations under the Good

18  Neighbor provisions, EPA simply said because it failed to make this quantification, it could not

19  make findings of failure to submit pursuant to the D.C. Circuit's *Homer City* decision.  Ignoring

20  the plain language of the Clean Air Act, EPA found that states did not have an obligation to

21  submit Good Neighbor provisions and therefore EPA did not have an obligation to make

22  findings of failure to submit.  Plaintiffs refer to the January 4, 2013 notice as EPA's "non-

23  finding."

28

1    Sierra Club, Environmental Defense Fund, along with the states of Maryland,

2  Connecticut, Delaware and the District of Columbia appealed EPA's January 4, 2013 "non-

3  finding" to the D.C. Circuit. *See Maryland v. EPA*, 13-1070 (consolidated with No. 13-1072).

4    While that appeal was pending, the Supreme Court reversed the D.C. Circuit's *Homer

5  City* decision. *See EPA v. EME Homer City Generation, L.P.*, 574 U.S. ___, 134 S. Ct. 1584

6  (2014).  The Supreme Court held the plain language of the Clean Air Act mandated that states

7  submit Good Neighbor provisions within three years of EPA promulgating a NAAQS, and that

8  EPA need not undertake any action to trigger this obligation. *Homer City*, 134 S. Ct. at 1600.

9    In light of the Supreme Court's decision, EPA agreed to Sierra Club, EDF, Maryland,

10  Connecticut, Delaware and the District of Columbia's request that EPA seek a voluntary vacatur

11  and remand of EPA's January 4, 2013 non-finding.  Thus, on August 1, 2014 the D.C. Circuit

12  vacated and remanded EPA's January 4, 2013 non-finding. *See Maryland v. EPA*, 13-1070 (D.C.

13  Cir. Aug 1, 2014) Order [Document#1505606] at 1.  As it is wont to do, subsequent to the D.C.

14  Circuit's vacating the January 4, 2013 non-finding, EPA has done nothing despite repeated

15  requests for prompt action by Sierra Club, EDF, Maryland, Connecticut, Delaware, the District

16  of Columbia and others.

17    When EPA undertakes a mandatory duty under the Clean Air Act but that undertaking is

18  later vacated by a court, EPA once again has a mandatory duty.  For example, in *Environmental

19  Defense v. Leavitt*, 329 F. Supp. 2nd 55 (D.D.C. 2004), EPA had promulgated a regulation

20  implementing the Clean Air Act's Best Available Retrofit Technology (BART) standards. *Id.*,

21  329 F. Supp. 2nd at 60.  The D.C. Circuit subsequently vacated and remanded EPA's BART

22  rule. *Id.*, 329 F. Supp. 2nd at 61.  Environmental Defense then sued EPA for violating its

23

28

mandatory duty by failing to promulgate a BART rule.  The D.C. District Court found that it had

jurisdiction to enforce such a mandatory duty.  The D.C. District Court explained:

> When a court vacates an agency's rules, the vacatur restores the status quo before
> the invalid rule took effect and the agency must "initiate another rulemaking
> proceeding if it would seek to confront the problem anew." *Indep. U.S. Tanker*
> *Owners Comm. v. Dole, 258 U.S. App. D.C. 6, 809 F.2d 847, 854 (D.C. Cir.*
> *1987)*; *Sugar Cane Growers Co-op. of Florida v. Veneman, 351 U.S. App. D.C.*
> *214, 289 F.3d 89, 97 (D.C. Cir. 2002)* (same).

*Id.*, 329 F. Supp. 2nd at 64.

Thus, on September 9, 2014, Sierra Club and WildEarth Guardians filed a Rule 60(b)

Motion to Modify Judgment in Case 4:11-cv-5651-YGR.  The motion requested that the Court

modify its previous summary judgment order to set a new date by which EPA must make

findings of failure to submit 2008 ozone NAAQS Good Neighbor provisions for those states

which had still failed to submit those provisions.  *See* Case 4:11-cv-5651-YGR, Dk#90.   This

Court denied Plaintiffs' Rule 60(b) motion.  *See* Case 4:11-cv-5651-YGR, Dk#95.  However, in

denying Plaintiffs' Rule 60(b) motion, the Court stated: "It is clear enough that EPA should now

take action and make findings as to which states are not in compliance with the Good Neighbor

provisions." *Id.* at 4.  The Court also stated: "As the parties acknowledge, plaintiffs can bring a

new action to enforce EPA's mandatory duty concerning the Good Neighbor provision relative

to the 2008 ozone NAAQS[.]" *Id.*  Thus, Plaintiffs filed this current action and are now moving

for summary judgment.

### C.     Legal Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine dispute of material fact and the

moving party is entitled to judgment as a matter of law.  *Summers v. A. Teichert & Son,*

*Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997).  When the evidence is "so one-sided that one party

1    must prevail as a matter of law," summary judgment is appropriate.  *Anderson v. Liberty Lobby*,

2    477 U.S. 242, 251-52 (1986).

3          Summary judgment is not treated as "a disfavored procedural shortcut" but as "an

4    integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and

5    inexpensive determination of every action." *Celotex Corporation v. Catrett*, 477 U.S. 317, 327

6    (1986) ("quoting Fed. R. Civ. P. 1").  Summary judgment is a particularly appropriate tool for

7    resolving claims challenging agency action.  *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770

8    (9th Cir. 1985).  Accordingly, summary judgment is entirely appropriate in the instant case.

9

10   **V.**     **FACTS**

11         On March 12, 2008, the EPA promulgated a new National Ambient Air Quality Standard

12   (NAAQS) for ozone.  Fact 1.  EPA set a new standard limiting ozone concentrations to no more

13   than 75 ppb over an 8-hour averaging period. *See* 40 C.F.R. § 50.15.  In accordance with Section

14   110(a)(1) of the Clean Air Act, States are required to submit SIPs to attain and maintain the

15   NAAQS within three years of the promulgation or revision of a NAAQS. *See* 42 U.S.C. §

16   7410(a)(1).  In assuring that SIPs attain and maintain the National Ambient Air Quality

17   Standards in accordance with Section 110(a)(1), States must ensure their SIPs include

18   requirements set forth under Section 110(a)(2) including Section 110(a)(2)(D)(i)(I) which is

19   known as the Good Neighbor provision. *See* 42 U.S.C. § 7410(a)(2).  States must submit

20   Infrastructure SIPs for the 2008 ozone National Ambient Air Quality Standards by no later than

21   March 12, 2011. Fact 2.

22         The Administrator is required to make a finding as to whether a State has submitted the

23   required SIP no later than six months after the date by which the State was required to submit

1  such a SIP. *See* 42 U.S.C. § 7410(k)(1)(B). Thus, EPA has a mandatory duty to make findings of

2  failure to submit for the Good Neighbor provision of Infrastructure SIPs for the 2008 ozone

3  National Ambient Air Quality Standards by no later than September 12, 2011. *See* Fact 4.

4  Alabama, Arkansas, California, Connecticut, Florida, Georgia, Iowa, Illinois, Kansas,

5  Massachusetts, Maine, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New

6  Mexico, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Virginia,

7  Washington, and West Virginia have not submitted an Infrastructure SIP satisfying the

8  requirements of Section 110(a)(2)(D)(i)(I), 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2008 ozone

9  NAAQS.  Fact 3.  Yet EPA has not made a finding, pursuant to 42 U.S.C. § 7410(k)(1)(B), that

10  Alabama, Arkansas, California, Connecticut, Florida, Georgia, Iowa, Illinois, Kansas,

11  Massachusetts, Maine, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New

12  Mexico, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Virginia,

13  Washington, and West Virginia [collectively "25 states"] have not submitted an Infrastructure

14  SIP satisfying the requirements of the Good Neighbor provision found in Clean Air Act §

15  110(a)(2)(D)(i)(I), 42 U.S.C. § 7410(a)(2)(D)(i)(I), for the 2008 ozone NAAQS.  Fact 5.

16  Therefore, it is currently after September 12, 2011, 25 states do not have a 2008 ozone

17  infrastructure SIP Good Neighbor submittal but EPA has not made findings of failure to submit

18  the Good Neighbor provision for the 25 states.  Facts 3, 4 & 5.

19

20  **VI.    ARGUMENT**

21  For the reasons explained below, EPA is liable under the Clean Air Act for failure to

22  issue findings of failure to submit for the 25 states' Good Neighbor element.  It is critical that the

23  Court order EPA to follow a reasonable schedule that requires EPA to promptly complete its

28

1   mandatory duty of making the findings of failure to submit.  This is necessary to protect the

2   public from serious risks posed by states that have not implemented the 2008 ozone NAAQS and

3   to level the economic playing field between the states.[3]

### A.   EPA IS LIABLE FOR FAILURE TO PERFORM ITS MANDATORY DUTY TO MAKE A FINDING THAT 25 STATES FAILED TO SUBMIT GOOD NEIGHBOR PROVISIONS

6   Sierra Club's Claim One alleges a violation of the mandatory duty in 42 U.S.C. §

7   7410(k)(1)(B) to make a finding within six months of the submittal due date that 25 states  failed

8   to submit of the Good Neighbor provision of the Infrastructure SIPs for the 2008 ozone NAAQS.

9   Before explaining why 42 U.S.C. § 7410(k)(1)(B) creates a mandatory duty to make a finding of

10  failure to submit, it is important to note that considering past practices, EPA will likely admit

11  liability in its answer, which is not yet due.

12  Turning to the detailed explanation of why EPA is liable on Claim One, the first sentence

13  of 42 U.S.C. § 7410(k)(1)(B) reads:

14  Within 60 days of the Administrator's receipt of a plan or plan revision, but no later than
    6 months after the date, if any, by which a State is required to submit the plan or revision,

---

[3] In the interest of conserving judicial and the parties' resources, Sierra Club has not attached declarations from individual members to establish standing.  Sierra Club established standing in the previous case on this same issue.  *See* 11-cv-5651-YGR, Dk.#36 at 7-10 and Dk.#36-10, 37-1, 37-5.
 Sierra Club notes, however, that even without member declarations Sierra Club has standing. Denial of information which one is entitled to under a statute is sufficient injury in fact to establish standing if the information is useful to the plaintiff.  *See FEC v. Akin*, 524 U.S. 11, 20-25 (1998).  Sierra Club is entitled to know officially if the 25 states have failed to submit Good Neighbor SIPs.  EPA's violation of its mandatory duty denies Sierra Club this information, which would help Sierra Club in ensuring that the Clean Air Act is properly implemented. Moreover, Sierra Club is entitled to know which downwind states the 25 states' pollution impacts and to what degree.  A Good Neighbor SIP or FIP would contain this information but EPA's failure to make a finding of failure to submit is denying Sierra Club access to a Good Neighbor SIP or FIP.  This information about the 25 states' downwind impacts is helpful to Sierra Club in terms of informing members of whose pollution they are being impacted by and how to best advocate for abatement of that pollution.

28

the Administrator shall determine whether the minimum criteria established pursuant to subparagraph (A) have been met.

42 U.S.C. § 7410(k)(1)(B).  This sentence addresses two situations.  The first, not relevant to Claim One, is when a state makes a SIP submittal.  In such situations, EPA must, within 60 days of the submittal, determine whether the minimum criteria for SIP submittals have been met.  This is known as a completeness or administrative completeness determination.

The second clause of the sentence can only have meaning if a duty exists when there is an absence of a state submission.  This clause provides, based on its plain language, that if, six months after the deadline for submission, there has been no submission, then EPA still has a mandatory duty to determine whether the minimum criteria have been met.  Of course, the minimum criteria cannot have been met if the state submitted nothing.  Therefore, if a state fails to submit a SIP submittal by its due date, EPA has a mandatory duty to make a "finding of failure to submit" for that submittal.

Congress' use of the term "shall" in 42 U.S.C. § 7410(k)(1)(B) makes clear that this is a mandatory duty.  *See Brower v. Evans*, 257 F.3d 1058, 1068 fn. 10 (9th Cir. 2001)("shall" means mandatory).  Thus, EPA has a mandatory duty to determine that the minimum criteria have not been met if there is no SIP submittal within six months of the due date for a particular SIP submittal.  This is referred to as a "finding of failure to submit" but technically, pursuant to the plain language of the statute, it is a determination that states have not made a submittal that meets the minimum criteria required for that submittal.  *See generally Natural Resources Defense Council, Inc. v. EPA*, 22 F.3d 1125, 1131 (D.C. Cir. 1994) ("Initially, section 110(k)(1)(B) *requires* the EPA to make a finding that the submittal is complete or incomplete within 2 months of submission or 6 months of the submission deadline.") (emphasis added).

1       Sierra Club is entitled to summary judgment and declaratory relief as to its first claim

2   because EPA has missed a statutory deadline.  As discussed above, 42 U.S.C. § 7410(k)(1)(B)

3   establishes a deadline for EPA to make findings of failure to submit of six months after any SIP

4   submission due date.  EPA promulgated the 2008 ozone NAAQS on March 12, 2008.  Fact 1.

5   Thus, the Clean Air Act sets a submission deadline for Infrastructure SIPs for the 2008 ozone

6   NAAQS of March 12, 2011.  Fact 2; 42 U.S.C. § 7410(a)(1).  EPA has acknowledged that the

7   deadline for states to submit their 2008 ozone NAAQS Infrastructure SIPs is March 12, 2011.

8   Fact 2.

9       Six months after March 12, 2011 is September 12, 2011; a date already passed.  Yet 25

10  states do not have Good Neighbor provisions, that is a Section 110(a)(2)(D)(i)(I) submittals,

11  currently pending with EPA.  Fact 3.  EPA has not made findings of failure to submit pursuant to

12  42 U.S.C. §7410(k)(1)(B) for the 25 states' Good Neighbor provisions.  Fact 5.  Therefore, EPA

13  is in violation of its mandatory duty under 42 U.S.C. §7410(k)(1)(B) to make findings of failure

14  to submit for the Good Neighbor provision of 25 states.  Thus, Sierra Club is entitled to

15  summary judgment and declaratory relief on Claim One.

16      **B.      THE COURT SHOULD REQUIRE EPA TO MAKE THE FINDINGS OF
             FAILURE TO SUBMIT WITHIN 30 DAYS OF THE COURT'S ORDER.**

17

18      As to remedy, the Court should order that EPA sign a final rule containing findings of

19  failure to submit a Good Neighbor provision for the 25 states within 30 days of the Court's order

20  and forward that final rule of the Office of the Federal Register within three working days of

21  signature.  This would mean that EPA would have illegally delayed the critical findings by

22  approximately three and a half years by the time EPA issues the finding.

23

28

1    This remedy is appropriate because, as detailed below: (1) EPA's illegal delay causes

2  inequality among the states; (2) EPA's illegal delay also risks serious public health impacts

3  including death of innocent people; (3) the task is relative simple as established by Plaintiffs'

4  expert; and (4) EPA has been on notice that it would have to make these findings for over two

5  years.

6    **1.    EPA's delay in making the findings provides the 25 states with an
       unfair advantage over other states which have complied with the
7       Good Neighbor requirement and/or receive the 25 states' pollution.**

8    The Clean Air Act is an example of "cooperative federalism" in which states and the

9  federal EPA both play key roles in ensuring that we have clean, productive air.  One of EPA's

10  key roles is to ensure that the Clean Air Act does not become a "race to the bottom" in which

11  certain states avoid or delay action to give certain polluting industries in their state an advantage

12  over those same polluting industries in other states.  However, when EPA illegally delays

13  fulfilling its mandatory duties, such as failing to make findings of failure to submit, it enables the

14  race to the bottom and allows certain states to gain an advantage over other states.

15    EPA's failure to timely fulfill its obligation to see that Good Neighbor provisions are

16  fully implemented creates inequity in certain downwind states.  Maryland is an example of a

17  state put at a disadvantage compared to the 25 states because of EPA's stubbornly refusing to

18  make findings of failure to submit.  Back in March of 2012, Maryland began to formally

19  complain to EPA about EPA's delay in making findings of failure to submit.  The Director of the

20  State of Maryland's Air and Radiation Management Administration wrote EPA urging EPA to

21  promptly "issue findings of failure to submit for overdue [2008 ozone] infrastructure SIPs[.]"

22  Fact 27.

23

1    The problem is that Maryland needs emission reductions from its upwind neighbors in

2    order to meet ambient air quality standards in Maryland.  George Aburn is the Director of the Air

3    and Radiation Management Administration within the Maryland Depart of the Environment

4    ("MDE").  *See* Declaration of George S. Aburn in Opposition to EPA's Motion to Extend

5    ("Aburn Dec.") in *Maryland v. EPA*, 13-1070 (D.C. Cir. 5/30/13) attached as Ex. 2.  Mr. Aburn

6    has plainly stated that "unless ozone [interstate] transport is effectively reduced, Maryland can

7    not, by itself, comply with the Clean Air Act.  More importantly, over 4 million Marylanders

8    continue to breathe unhealthy air.  Without an effective solution to the ozone transport issue,

9    public health in Maryland remains at risk."  Fact 28.

10    MDE's research establishes that the influx of ozone transported from upwind states into

11    Maryland can be higher than 80 ppb at times.  Fact 29.  The 2008 ozone NAAQS is 75 ppb.

12    Thus, at certain times, even if Maryland's instate emissions contribution to its ozone pollution

13    were zero, Maryland would still be violating the 2008 ozone NAAQS because of ozone

14    transported from other states.  In order to attain the 75 ppb 2008 ozone NAAQS by the

15    **December 31, 2015** due date for the parts of Maryland that are in the Metro-D.C. and Metro-

16    Philadelphia nonattainment areas, "Maryland must have upwind reductions of [ozone precursors]

17    emissions as soon as possible." Fact 29.  In other words, states like Maryland need timely

18    upwind reductions which EPA is required to provide if upwind states fail to do so and the clock

19    is already running for these reductions.

20    The scale of the problem is significant.  For example, there are over 1 million people

21    living in the Baltimore ozone nonattainment area who are particularly at risk from exposure to

22    ozone because they have asthma, COPD, or cardiovascular disease.  Fact 30.

23

28

1    Furthermore, Maryland, unlike the 25 states, has already submitted its 2008 ozone

2    NAAQS Good Neighbor provision to EPA.  Fact 26.  Thus, Maryland suffers in two ways.  It

3    gets pollution from upwind states included in the 25 states like Michigan, North Carolina and

4    Virginia.  This pollution prevents Maryland from meeting the 2008 ozone NAAQS by the

5    rapidly approaching December 31, 2015 deadline.  Fact 25.  Maryland has also used its resources

6    to prepare its 2008 ozone NAAQS Good Neighbor provision while the 25 states have not.  Fact

7    26.  EPA should be required to do what it is mandated to do to help remedy this interstate

8    inequality by issuing findings of failure to submit within 30 days of the Court's order.

9               **2.       There are serious public health and welfare impacts caused by
                            EPA's illegal delay in making findings of failure to submit**

10

11    As explained above, EPA acknowledges that exposure to ozone pollution can kill

      innocent people as well as cause expensive emergency department visits and hospital

12    admissions.  Fact 8.  Exposure to ozone also exacerbates asthma, pneumonia, and bronchitis, and

13    can result in the permanent scarring of lung tissue.  Fact 7.  Children are most at risk from ozone

14    pollution, as well as people who exercise or perform manual labor outside, people with pre-

15    existing lung and heart diseases such as asthma, and the elderly.  Fact 9.

16    The detrimental effects of ozone pollution extend beyond public health.  Ozone interferes

17    with vegetation's ability to function properly, which results in injuries such as decreased crop

18    yields and damage to native ecosystems.  Fact 10.

19    As this is literally a life or death matter, the remedy should be as expeditious as possible.

20    Fortunately, as explained below, EPA's task is straightforward and not time consuming.

21

22

23

28

3. **Making the finding is a relatively simple task as demonstrated by Plaintiffs' expert and mock finding of failure to submit**

Issuing findings of failure to submit is a straightforward process that EPA is easily able to complete within 30 days.  It is relatively easy to track the status of a state's Infrastructure SIP submittals—anyone can do so on the EPA's own webpage: http://www.epa.gov/air/urbanair/sipstatus/reports/map_i.html.  *See* Fact 11.  EPA can officially confirm whether there are submittals for the 25 states in EPA's own files relatively quickly.

Furthermore, EPA can issue these findings without the need for notice and comment rulemaking.  *See* Fact 12.  EPA issued the finding of failure to submit pursuant to this Court's summary judgment order in case 11-cv-5651-YGR without notice and comment.  Fact 12.

The reasonableness of a 30-day period for EPA to make the finding is demonstrated by David Howekamp, whom Plaintiffs retained as an expert on the appropriate remedy for EPA's failure to make a finding of failure to submit 2008 ozone Infrastructure SIPs in case 11-cv-5651-YGR.  Mr. Howekamp was a career employee at EPA for 31 years.  Fact 13.  For the last 18 of those years, he was the Director of the Air Division for EPA's Region 9 office in San Francisco.  *Id.*  In that position, he managed a budget of over $40 million and directed a staff of 120 scientists, engineers and planners in implementing the Clean Air Act.  *Id.*

Mr. Howekamp has extensive experience in establishing and negotiating rulemaking schedules; most of the rulemakings produced by his Division were performed as a result of court orders or settlement agreements.  *Id.*  He was personally responsible for preparing Federal Register notices making findings of failure to submit all or portions of SIPs, so he has first-hand knowledge of the technical and policy considerations in such matters and the management demands and resource requirements for producing these notices.  Fact 14.

1    Mr. Howekamp establishes that a 30-day timetable for EPA to make the findings of

2    failure to submit the 2008 ozone Infrastructure SIPs is reasonable because: (1) findings of failure

3    to submit are routine so there are well proven templates for rapidly creating, signing and

4    publishing the required findings; (2) no technical or policy analysis is required but rather a

5    straightforward determination; and (3) preparing the Federal Register notice is simplified

6    because the majority of the review requirements of more complicated rulemakings by the agency

7    need not be addressed.  *See* Facts 15, 16, & 17.

8    To further demonstrate how straightforward the task of preparing the finding of failure to

9    submit is, Jeremy Nichols, the Climate and Energy Director for plaintiff WildEarth Guardians,

10   actually drafted a mock version of the finding.  Mr. Nichols was able to draft a finding in two

11   and a half hours. Fact 18.  Even if we assume that management review took ten times as long as

12   it took to actually write the document, which seems excessive, we are still talking about less than

13   a week of staff time for an agency that has a multi-billion dollar budget. This demonstrates that

14   30 days is more than adequate time for EPA to prepare the findings.

15       **4.    EPA has been on notice it would have to make these findings since at least 2011.**

16

17   Providing EPA with 30 days from the issuance of an order to make the findings is also

18   entirely reasonable because EPA has been on notice since at least November, 2011 that Sierra

19   Club would seek an order requiring the findings.  That is when WildEarth Guardians filed their

20   complaint in case 11-cv-5651-YGR.

21   EPA will likely respond to this by claiming that because the D.C. Circuit vacated the

22   1997 ozone NAAQS Good Neighbor provision, EPA could not make the finding with regard to

23

28

1   25 states' 2008 ozone NAAQS Good Neighbor provision.  This excuse is as unpersuasive as it

2   initially sounds.

3        Regardless, even if one accepted for the sake of argument this assertion, the Supreme

4   Court reinstated the 1997 ozone NAAQS Good Neighbor provision on April 29, 2014.  *Homer*

5   *City*, 134 S. Ct. at 1584.   Eight months have gone by and despite repeated requests by Sierra

6   Club, Maryland, other states and other non-profit environmental groups, EPA has still refused to

7   make the findings of failure to submit the 2008 ozone NAAQS Good Neighbor provision.

8        Furthermore, this Court stated when it denied Plaintiffs' Rule 60(b) motion: "It is clear

9   enough that EPA should now take action and make findings as to which states are not in

10  compliance with the Good Neighbor provisions."  Case 4:11-cv-5651-YGR, Dk#95. at 4.  All of

11  this notice makes an order providing EPA with 30 days from the order to make the findings

12  entirely reasonable.

13        **5.    EPA's abysmal record of delay in implementing the Act**
                  **makes any assertions by EPA about the appropriate timing of**
14               **the finding suspect**

15        EPA's consistent failure to meet Congressional deadlines demonstrates that any proposed

16  schedule EPA offers is suspect.  Put simply, when it comes to implementing the Clean Air Act,

17  EPA is in the business of delay.  Indeed, in just the past few years in this one judicial district,

18  environmental groups have had to file many suits seeking to force EPA to meet mandatory

19  deadlines found in the Clean Air Act.  Fact 19.

20        Delay in the implementation of several other ozone rules highlights the need for an

21  expeditious schedule.  EPA still has not fully implemented ozone NAAQS from 1979 and 1997.

22  Facts 20 & 21.  This history of delay–which is still currently denying millions of people needed

23

1    protection for ozone pollution—means that timely implementation of the 2008 ozone NAAQS is

2    even more important.

3              The Court should reject any arguments by EPA that Sierra Club's proposed deadlines are

4    impossible to meet. The United States District Court for the District of Arizona was

5    confronted with a similar assertion from EPA in a suit to compel the agency to review the

6    NAAQS for Particulate Matter (PM). The analysis that court utilized applies equally to this case:

7              In such circumstances, the agency carries a heavy burden to show that
              compliance with statutory mandated deadlines is impossible or infeasible.
8              Excuses for delay must go beyond the general proposition that further study
              and analysis of materials will make final agency action better, because further
9              study will always make everything better, and it is always easier to do
              something with more rather than less time.
10
     *American Lung Ass'n v. Browner*, 884 F. Supp. 345, 347 (D.Ariz. 1994) (internal citations
11
     omitted); *see also Sierra Club v. Thomas,* 658 F. Supp. 165, 172 (N.D. Cal. 1987) (the burden on
12
     the agency to show impossibility "is especially heavy where the agency has failed to demonstrate
13
     any diligence whatsoever in discharging its statutory duty…and has in fact ignored that duty for
14
     several years."); *Alabama Power Co. v. Castle*, 636 F.2d 323, 359 (D.C. Cir. 1979) ("The
15
     agency's burden of justification in such a case is especially heavy.").  In justifying its decision to
16
     order a shorter timeline than that proposed by EPA for the review process, the Arizona district
17
     court pointed out that by allowing the NAAQS review deadline to lapse, "the EPA has not
18
     merely missed a deadline, it has nullified the congressional scheme for a fixed interval review
19
     and revision process." *American Lung Ass'n v. Browner*, 884 F. Supp. at 348.  Notably,
20
     although EPA contended that it simply could not perform the review for particulate matter in less
21
     than 4 years and 3 months,  *Id.* at 346-347, the agency was nonetheless able to complete this PM
22

23

28

1   NAAQS review in less than three years. Fact 23.  Moreover, the product of this PM NAAQS

2   review process survived legal challenges raised by both industrial and environmental groups.

3   Fact 24.  Therefore, the Court should order EPA to sign a final rule regarding findings of failure

4   to submit for the 25 states within 30 days of the Court's order and requiring EPA to forward the

5   signed rule to the Office of the Federal Register within three business days of signature.

6

7   **VII.    CONCLUSION**

8           For the reasons explained above, Sierra Club respectfully requests that the Court grant

9   summary judgment as to Sierra Club's first claim and order EPA to issue findings of failure for

10  the 25 states' Good Neighbor provision in accordance with 42 U.S.C. § 7410(k)(1)(B) within 30

11  days and send these findings to the Office of the Federal Register for publication within three

12  working days of signature.

13                                          Respectfully submitted,

14                                          /s Robert Ukeiley

15                                          ROBERT UKEILEY (Admitted *Pro Hac Vice*)
                                            Law Office of Robert Ukeiley
16                                          255 Mountain Meadows Road
                                            Boulder, CO 80302
17                                          Telephone: (303) 442-4033
                                            rukeiley@igc.org
18
                                            KRISTIN A. HENRY (Cal. Bar No. 220908)
19                                          Sierra Club
                                            85 Second Street, 2nd Floor
20                                          San Francisco, CA 94105
                                            Telephone: (415) 977-5716
21                                          Kristin.Henry@sierraclub.org

22                                          Counsel for Plaintiffs Sierra Club and WildEarth Guardians

23  Dated: January 16, 2015

28